We'll move now to the next case, Shaffer v. Lashbrook. Thank you. Okay, Shaffer v. Lashbrook, and Mr. Bennett. Good morning, your honors, and may it please the court. Addison Bennett, appearing on behalf of Mr. Shaffer. The district court's abrupt and unwarranted resolution of Mr. Shaffer's case was an abuse of discretion for three reasons. First, because Mr. Shaffer's alleged misstep, failing to update his mailing address a single time nearly two years into litigation, is not the type of egregious or repeated litigation misconduct this court has required to justify that extreme sanction. Second, because the district court, in its own words, dismissed the case based on a presumption that Mr. Shaffer was no longer interested in pursuing his case. It formed that presumption based only on the defendant's motion, without offering Mr. Shaffer a chance to fix the alleged mistake, or later explaining why the court disbelieved Mr. Shaffer's post-judgment explanations. And third, because this court's Sroga and Del Carmen decisions make clear that this court can and should reverse on this precise procedural posture. The court's bare bones denial of Mr. Shaffer's Rule 60B motion for relief constituted abuse of discretion, and this court should reverse. As this court wrote in Del Carmen, a 60B motion necessarily considers the circumstances of the underlying judgment, albeit for the limited purpose of looking for a substantial risk of injustice in the underlying dismissal. Multiple cases in this circuit, from Sroga to Del Carmen to Dickerson, make that clear. So despite what the government says in its response brief, there is one issue presented in this case, and that is whether the denial of Mr. Shaffer's Rule 60B motion was an abuse of discretion. And whether there is fundamental injustice in the underlying dismissal is one of the considerations that is relevant in that inquiry. And that is why some consideration of the underlying dismissal is necessary. As the court wrote in Del Carmen, it was incumbent, and this is a quote, on the district court to consider whether the record at the time of dismissal supported the imposition of such a severe sanction. So when we look to the circumstances of the underlying dismissal first, as this court has written many times, the punishment of a litigation sanction must fit the crime. And in this case, the punishment was extreme, the most extreme option, dismissal with prejudice. And that simply did not fit the crime. This court's precedence provided the district court with a menu of procedural options it could have chosen to take to ensure that its presumption that Mr. Shaffer was no longer interested in pursuing his case was correct. It could have fired a warning shot, as the court suggested in the Byer case. It could have considered a less extreme sanction first, or considered whether this actually was an extreme sanction, an extreme situation warranting that extreme sanction. And at the very least, as the court wrote in Johnson, the district court could have explained why other lesser sanctions or other options would not have been fruitful. The court here did none of these. We should be clear, then, that what the district court did in this case was dismiss the case conclusively based on a disputed fact, which is whether Mr. Shaffer had in fact failed to update his address. The key fact in this case, or the key set of facts, is in fact what the district court did in response to that allegation. As this court wrote in Thomas, as well as in Dickerson, a court should only confer disinterest in a case based on a pattern of missed deadlines or misconduct on behalf of the plaintiff. In this case, there was no misconduct and there were no missed deadlines. Mr. Shaffer was in fact not under orders to do anything at the time that his case was dismissed. So, while the record does not conclusively show that Mr. Shaffer in fact did fail to update his mailing address, and there is in fact evidence that he did attempt to update his mailing address, even assuming for the sake of argument if he had not, all he did was commit a single misstep, failing to mail a letter. And the court jumping straight to the dismissal with prejudice was an abuse of discretion. And once again, under Sroga and Del Carmen and Dickerson, it is before this court to consider whether those circumstances, the district court failing to adhere to any of this court's procedural safeguards before jumping to the extreme sanction of dismissal with prejudice, that is properly before the court on the Rule 60B motion. The dismissal was clearly wrong based on any of the court's precedents, and we are not asking for a new procedural rule or any sort of new guidance to district courts, only that this court apply what it wrote in Del Carmen, Dickerson, and Sroga. Mr. Bennett, this is Judge Brennan. Is one of your arguments that the requirements of the court were in the screening order very early in the procedural posture of the case and the case had been litigated for a while and then it went dormant? My question goes to, is it the timing of when the court admonitions occurred or is it the court admonitions or the lack of court admonitions that you're relying on? It is both, Your Honor. The district court certainly did warn Mr. Schaefer as part of its initial orders in the case that failing to update his address may result in dismissal of his case. Compare that to the Johnson case where the litigant was actually given a specific warning about the importance of attending a specific status hearing. This court held that that warning was insufficient in light of the other procedural safeguards. So the fact that there was a warning somewhere on the docket before nearly two years of otherwise uneventful litigation, that is insufficient under this court's precedent to conclude that Mr. Schaefer was appropriately warned of the potential seriousness of the alleged misdeath in this case. Thank you. And unless the court has any further questions, I could reserve the remainder of my time. Thank you. Mr. Griffiths? Good morning, Your Honors. May it please the court. Assistant Attorney General Carson Griffiths on behalf of state defendants. Mr. Schaefer failed to establish excusable neglect under federal rule of civil procedure 60B1 because he failed to inform the district court of his release from prison, and he ignored his case for eight months. Relief from judgment is awarded only in extraordinary circumstances, and this court will reverse the denial of a Rule 60B1 motion only if no reasonable person could agree with the district court's decision and there is a danger that the underlying judgment was fundamentally unjust. Mr. Schaefer can't meet that standard here. The district court reasonably found that Schaefer's inattentiveness to his lawsuit was not excusable neglect. Mr. Schaefer was placed on mandatory supervised release in late August 2017, and he didn't contact the court or do anything to advance his case until he was reincarcerated in May 2018. In the interim, crucial deadlines passed, including the discovery cutoff date and the dispositive motion deadline, and the case completely sat dormant. Under those circumstances, the district court reasonably found that Mr. Schaefer did not keep proper tabs on his case and thus failed to show excusable neglect. Mr. Schaefer's arguments on appeal do not show that the district court abused his discretion. He relies heavily on case law, interpreting the standards for dismissals for want of prosecution under Federal Rule of Civil Procedure 41B, ignoring his failure to appeal that dismissal order. And that's important because even an abuse of discretion under Rule 41B is not enough to establish grounds for relief from judgment under Rule 60B. And this court, as plaintiff's counsel notes, only examines the underlying dismissal to determine if there was some risk of fundamental injustice. And there was nothing unjust here, as Mr. Schaefer ignored his case for eight months. Counsel points out that, or he argues that, this was an isolated incident, that Mr. Schaefer missed one deadline and the district court rushed to dismissal for want of prosecution without considering other options. But that misconstrues the record. Defendants notified the court that Mr. Schaefer had been released from prison at early October 2017. The district court waited five months. Mr. Schaefer made no response to that motion and didn't contact the court in any way. The district court, or excuse me, on the discovery cutoff date then, Dr. Shah, the Wexford defendant, filed another motion asking the district court to either dismiss the case for want of prosecution or amend the scheduling order. The district court waited another month after that until the dispositive motion deadline arrived, at which point then it dismissed the case for want of prosecution. So this wasn't a circumstance of Soroga or Del Carmen where there's a single misstatus conference and the district court immediately dismisses a case. This was a long-term pattern of delay and the district court had no way of contacting Mr. Schaefer. So considering lesser sanctions such as issuing an order for rule to show cause would have been futile. The district court would have entered its order and Mr. Schaefer would not have received it, so there would have been nothing done. Under these circumstances, again, the district court reasonably found that Mr. Schaefer abandoned his case and dismissed the case for want of prosecution. I also dispute that this case was dismissed based on a disputed fact. Even taking Mr. Schaefer's claim that he mailed a letter updating the district court as to his address in early September 2017 is true, that does not explain his inattentiveness to his litigation. Assuming even that Mr. Schaefer tried to notify the court and defense counsel, he still made no response to either of the motions and didn't check on his case in any way between his release and his reincarceration. But even so, the district court also reasonably concluded that Mr. Schaefer's claim that he mailed that letter was implausible. As the district court noted, Mr. Schaefer allegedly sent that letter to three separate individuals. The district court, state defendant's counsel, and Wexford defendant's counsel. And the U.S. Postal Service allegedly lost all three of those pieces of mail. That claim alone on its face is implausible. And also, Mr. Schaefer undermined his own claim by attaching what he claimed to be a copy of one of those letters to his Rule 60B motion. Now, it's important to remember that Mr. Schaefer supposedly sent that letter while he was on mandatory supervised release. So he would not have had it with him to attach to the Rule 60B motion after he was reincarcerated. And in recognition of that fundamental factual dilemma, Mr. Schaefer tried to explain that an unidentified family member or friend sent the letter into prison for him. But that's impossible in this case. Because Mr. Schaefer admitted he received the district court's dismissal order on July 11th, 2018. And he filed his Rule 60B motion the next day. So the individual family member or friend outside the prison would have had to be contacted by Mr. Schaefer and send that letter in within 24 hours. It's just not possible to do so. And in light of that obvious implausibility, district court did not abuse its discretion in declining to credit Mr. Schaefer's explanation here. Finally, I'd like to address briefly the other two provisions that Mr. Schaefer cites in his opening brief as bases for relief from judgment here. Rule 60B-4, which applies to void judgments, does not apply here. Because it's obvious the district court had personal and subject matter jurisdiction. And also, Mr. Schaefer wasn't deprived of due process. He received notice of the judgment order and an opportunity to challenge it through his Rule 60B motion. And finally, Rule 60B-6, the catch-all provision, isn't applicable because, as Mr. Schaefer recognizes, Rule 60B-1 is the proper framework in which to address a claim of lost mail, like his claim. And if any other subsection of Rule 60B applies, Rule 60B-6 cannot. Moreover, even if Rule 60B-6 was the proper framework in which to address this claim, Mr. Schaefer can establish he was entitled to relief from judgment under that provision because he was not faultless. Again, the judgment resulted from his delay and his inattentiveness. So, unless this court has any questions, we would ask that you affirm the judgment of the district court. Thank you. Thank you, Mr. Griffiths. Mr. Bennett? Thank you, Your Honor. Just a few more points. First, on the Rule 60B point, this court's cases make it clear that the district court is required to do more before conclusively presuming that a litigant is disinterested in his case and jumping to the extreme sanction of dismissal with prejudice. So, that is the reason for the procedural safeguards. And to simply assume that a procedural safeguard would not have worked in this case under any circumstance, there are sort of two responses to that. One is that the district court did not say that or explain it, which is one of the options the district court could have gone to under this court's well-established precedent. And second, the rule from this circuit does not require that district courts do everything they possibly can definitively to rescue a plaintiff's case, only to take appropriate procedural safeguards to make sure that their presumptions that plaintiffs are disinterested in their case are actually true. So, to have at least afforded Mr. Schaeffer an opportunity to respond to the allegation, to correct any alleged mistakes, that really is the bare minimum of what this court has required. And while the procedural safeguards do not establish an especially high bar on district courts, the district court here failed to follow any of the circuit's precedents, and that was a mistake. Secondly, the government's post hoc rationalizations for the reasonableness of the district court's order really do not appear anywhere in the district court record. As a result, Mr. Schaeffer had very little opportunity to respond to the dismissal of his case in sufficient time to correct it, and the explanations for why the district court might have acted reasonably in hindsight still do not comply with this court's requirements for the procedural safeguards that district courts must take before dismissing cases with prejudice, based on a presumption that a plaintiff is no longer interested in the case. And again, that's because the cases require a pattern of disinterest or a pattern of misconduct or missed deadlines, and that simply was not present here. This all comes down to the district court's presumption that Mr. Schaeffer was not interested in pursuing his case and the abruptness with which it dismissed his case with prejudice, and for that reason, we would ask the court to reverse, and unless the court has any additional questions, that's all we would ask. Thank you, Mr. Bennett. Ms. Gonsi, I also thank you and Jenner and Block for sponsoring Mr. Bennett and pursuing his case. Thank you very much. Thanks to all counsel, and the case will be taken under advisory.